bring the attorneys in. The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States Court of Appeals in and for the Seventh Judicial Circuit is now   United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye,  hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States Court of Appeals in and for the Seventh Judicial Circuit is now sitting. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. All persons having business before this honorable court are admonished to draw  All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. I have a question regarding that and make an observation regarding that particular point. If you, I understand why you're here under 12B1 and if we remand for fact finding in the district court, the district court, I don't know what the district court, I don't know what the facts are with respect to whether or not your client was able to satisfy the debt. I know the appellees say that he has inconsistent statements or there's inconsistent records as to whether he would be able to satisfy the debt, which may or may not create some problems down the road. I just don't know. But my understanding is from the law is there's no obligation to notify your client of increasing debt of future harm based on the interest, which leads me to a 12B6 problem. As I understand paragraph 66 of your complaint, you argue that the statute was violated in three ways. One, referring to the alleged debt as an account instead of a judgment. Two, communicating two different amounts as being the balance due, which I've scoured the letter and I don't see that at all. This is just my observation. I don't see two different amounts as being the balance debt. And three, by failing to inform client for the amount of alleged debt increases on a daily basis. And if there's no obligation of the law to allege or to fail to inform that the amount of the debt increases on a daily basis, you're left with the only violation is referring to the alleged debt as an account instead of a judgment. And I have a hard time seeing how that could survive a 12B6 motion. With respect to the three violations that were alleged, in our reply brief, we've decided not to pursue the other two. In other words, the only issue here is whether or not the failure to inform that an amount is increasing, if it is a violation. I believe Miller v. McCalla says that it is. It established a safe harbor that required. Okay. It didn't require, I'm sorry. It stated that if you use this language, if you say that an amount may increase due to interest and other charges, then you won't violate the law. But I think that Miller has also been applied to E as in this letter. Okay. There certainly, this isn't the first time. I'm sorry. No, I just, you may be right on that. You may very well be right on that. I thought that's how I read your reply brief too, is the same way as, I certainly saw your reply brief the same way regarding the communication to two different amounts due. And as far as the alleged debt being an account instead of a judgment, if you're abandoning that violation, then you're stuck with number three. But I only want to make that observation because if this does go back on 12B1 and it goes back for fact finding and there's no way to survive a 12B6 motion, even if you win a 12B1 motion, then what is this case about? I guess that's my observation for you. Well, this case is very similar to Basel. The court remanded in Basel based on the same type of violation. In other words, a failure to inform a consumer that a debt is increasing. That's exactly what we have here. And in fact, the facts in this case are even more compelling because in Basel, the court remanded even though there wasn't a clear allegation of injury because the court ultimately found that general allegations such as in Basel where she alleged that interest was increasing the debt and she didn't know about that, embraced specific allegations. And the court found that a reasonable inference can be made that she was harmed and that this detrimentally affected the handling of her debts because a reasonable person would have considered it, would have paid higher interest debts before lower interest debts. And this case is really very, very similar to the fact pattern in Basel. But as I said, even more compelling because the appellant here did in his proposed amended complaint allege his injury. Specifically, he alleged that had he known that the debt was increasing, he would have paid this debt over other debts that he had that were either static or that were increasing at a lower rate. And I think just without even considering other debts, appellant was injured here because ultimately he didn't pay a debt that he would have paid had he known the truth. And now he owes a lot more money than he would have owed had he known the truth and he would have paid it. Now, your opponent argues, Mr. Casello, your opponent argues that he wasn't going to pay any debts, that he had made it clear that he didn't have any money. What about that? I don't see how an inference can be made. I think the evidence presented by Weltman is that there was a letter sent in September of 2019 in some other case saying that Mr. Chalumbaut was insolvent. But this is on a different point in the April 2020 to pay the debt. So we're talking about a completely different timeline. Whatever his situation was in September of 2019 was not necessarily a situation in April 2020. And he's alleged that, yes, he could have afforded to pay and he would have sought to resolve the lower balance amount. It's not in the record, but I met with Mr. Chalumbaut, who has English as his second language, and he said, yes, I would have paid the lower amount, the discounted balance that was offered. And that's why one of the reasons he amended to assert that. I think at the least, he should have been given an opportunity to establish that in an evidentiary hearing. I don't see how defendants claims that this letter that was sent in September 2019 in another case puts into doubt whether he could have afforded to pay it in April 2020. That is seven minutes, Your Honor. We would reserve three minutes for rebuttal. All right, Mr. Schultz, you may proceed. May it please the court. Counselor, my name is David Schultz. I represent the Apple League. First, Judge Kirsch, as to your question, you're correct. The Seventh Circuit has stated that in a series of cases. The sound is a little bumpy for me here. Could you please repeat what you just said? Sure. Judge Kirsch, in regards to your question, you're correct that the Seventh Circuit has issued not less than three cases that say exactly what you said about no obligation to state that it's incruing interest. And that's the Barnes case, the Wall, W-H, W-A-H-L, the Hahn case, H-A-H-N. Counselor responded with the Miller. And I'll just add that that was a 692-G claim in which the court suggested that where you have to identify specifically by statute the debt amount that if it's increased, you could add that safe harbor letter. So Mr. Schultz, here's my problem with this situation right now. I'm looking at Judge Gettleman's order dismissing the case. And the very last line says, the case is dismissed without prejudice for lack of standing. And so that's as much relief as you got. In theory, as a dismissal without prejudice, it could be refiled in a state court, which might have a different and more liberal standing policy. Illinois, for example, does. And we've seen many a case in other contexts that illustrate that. So you didn't file a cross appeal asking for more relief than you got from the district court. You didn't file a cross appeal saying, as a matter of fact, we preserved a 12B6 argument. This should be with prejudice, which, of course, would be raised judicata in any further proceeding. So I don't see how we can avoid a remand, whether it's a long-lived remand or a short-lived remand. Not for me to say, but this is a dismissal without prejudice. And it looks to me like there is an allegation of a concrete injury. The order of dismissal without prejudice is all the judge could have done. He could not dismiss it with prejudice on the merits when he has no jurisdiction. So that's what he had to do. He had to dismiss it without prejudice. And if that was a mistake, then we have no choice but to send it back to the district court. No, it was not a mistake. That was the correct order. He could not. He could not decide the Rule 12B6 issue because he did not have jurisdiction. I wasn't being clear. If we agree with him that there's no standing, then this is fine. If we don't agree with him, and if we think that there is enough in this complaint to establish Article 3 standing, injury in fact and causation and redressability, the classic standing requirements, then we can't go on and do more than that. The only issue, in other words, before us is standing. The judge never ruled on the 12B6 issue. So I don't believe this court would be deciding that issue for the first time either. Okay. Okay. I just wanted to make sure that we were all clear on the limits of the district court's authority. You've issued not less than a dozen, maybe more than 12 dismissals for lack of standing and not remanded for an evidentiary hearing. But they all depend on whether the person alleged only a mere procedural violation or whether the person alleged some concrete injury, concrete, imminent, et cetera, injury. And although it's just two paragraphs, as I recall, paragraphs 54 and 55, if I'm not wrong, why aren't they enough to allege that kind of concrete harm? Well, Judge Gettleman certainly found that they weren't sufficient. And facially and factually they failed. Go ahead, please. Sure. So I believe facially and factually they failed. Judge Gettleman raised the issue of standing. And under Bazille, as you know, you said they have to now come forward with competent evidence. Plaintiff's counsel was aware of the Bazille ruling that was cited in his memo. Plaintiff's counsel chose in nature of an evidentiary matter to amend his pleadings to raise additional allegations. Plaintiff's counsel filed a memorandum. We filed a memorandum. We attached facts as well. All of those facts were facts that were in the plaintiff's realm. There were pleadings that plaintiff had filed. There were judgments and litigation that plaintiff was involved in. There were letters from plaintiff's lawyers. So it was nothing no surprise. But why isn't Mr. Casalo's answer about the insolvency thing that I asked about something that does reveal a potential issue of fact which would need to be resolved? Namely, you know, somebody's financial position in 2019 might not be the same as it is in 2020. Well, I think I'd like to go back to it facially. As the judge pointed out, he fails to identify what interest bearing case account debts he was paying over non-interest bearing. Why did he have to do that? He says, if I had known that this was accruing interest by the day, I would have prioritized this debt over other debts that I had. I would have paid it sooner, saved the money of the increasing. That's a concrete pocketbook injury, which is what we're looking for. Those were conclusory statements. It doesn't matter, though. This is the pleading. He doesn't have to. He doesn't have to prove the whole case at the pleading stage. Under Bazille, as you said, that once the allegations supporting standard are questioned, the plaintiff has to come forward and these allegations fail to do it. They don't, they don't allege any account that he actually paid those interest bearing over non-interest bearing account. They don't allege any interest, non-interest bearing accounts to be paid. They don't allege what debts. They don't allege the amounts of debts. They don't allege the ability to pay. He hasn't explained how this debt was going to be paid over any other debt he had. And also facially, the claim that he did not know that this was accruing interest impacted him does not make sense under his timeline and his allegations. What we do know based on his allegations is he had a credit card debt. We all know a credit card debt accrues interest. He did not pay it. It went into default. He did not pay it. He was asked to pay it. He did not pay it. He was sued and served at the lawsuit, but asked specifically for post-judgment interest. He did not pay it. A judgment where he was in court was entered. The judgment said he was going to get interest. He did not pay it. He got the letter from Weltman Weinberg, and it does say that the debt as of this date is X, which certainly implies that it's going up, and in fact was larger than the amount previously. In light of that letter, he did not pay it. He says he got the phone call. He made the phone call. They told him about interest. He still did not pay it. In the two years that this case has been pending, Your Honor, he has known about interest, and he has not paid the debt. That absolutely, facially contradicts the conclusory allegation. It sounds like fact-finding to me. No, that's his allegation. Those are from his allegations. Those are reasonable inferences from his allegation and his timeframe. Factually, what we did point out is that he got a complaint that said $3,607 plus interest is what they sought. He was served with citations to discover assets that were over $4,000. Right. We all know that he didn't pay, right? No, but I'm saying factually we presented evidence that demonstrated he knew it was a true interest. We presented evidence that had he known at the time he got the original offer that this interest was accruing, he wouldn't have realized that the sensible thing to do was to pay it then. I mean, you're looking at events afterwards. I'm just not sure that this is inherently implausible. Well, I believe it is when you look at the timeline of his behavior, where it was clearly to him known to be increasing because of interest and he didn't pay for the last two years and prior to the judgment. But there was no offer on the table during most of that time. There was an offer that he got. Right. Very good point. You didn't come back with another offer during this period of time that he supposedly knew what was going on. So talk about implausible. He says, if I knew that interest was accruing when I got the letter for the debt, I would have paid it because there might have been some amount of interest, a relatively small amount. That letter, what did it ask for? It asked for him to pay 40 percent of the judgment amount. The interest was irrelevant. They were wiping off 60 percent six, seven months after the judgment. If it was plausible that he was going to pay because he was concerned about interest, he certainly would have paid when he was offered a 60 percent discount. So I talk about plausibility just as you are. And when you look at the allegations of his complaint, the timeline he lays out, the facts of him not paying in light of specific knowledge of the interest accruing aspect. And then and then when you layer on separately, if you'd like, factually that he was getting pleadings that said interest was accruing and the debt went up. He was getting citations that said specifically said interest was accruing and he took no action and the debt was going up. When he got a letter that said that as of this date, it's X, which was higher, three different numbers. Factually, he chose not to pay even after that, when he was offered 60 percent discount. It is absolutely implausible and factually incorrect to assume that he would have paid this or could have paid this. When you add on the fact that he has filed not less than seven consumer lawsuits during this period of time, he was represented by these lawyers sending letters and the lawyers said he can't pay because he's insolvent. Relatively close to this time frame and borne out by the actions taken. The final thing, I know I'm out of time, the final thing he refers repeatedly to risk of harm. And as you know from your Med One opinion a month ago, risk of harm is not the standard. He uses it at least seven times in his opening brief, twice in his reply brief. You've made very clear that Ramirez was a tran union and your Med One case, that is not the right standard. I appreciate the time. We request that Judge Gettleman's order be affirmed. Mr. Casillo? Yes. To address the allegation of risk of harm, we did allege risk of harm, but we also extensively alleged that there was an actual harm. And that's throughout both the initial and reply brief. As far as the Seventh Circuit and the requirements for telling a consumer that an amount is going up, both Boucher, a Seventh Circuit case, and Miller have established that, yes, you do have to tell someone, a consumer, that the amount is going up. Because per lox, another Seventh Circuit case, a consumer can't be expected to know the legal meaning of terms. And Weltman repeatedly says that, well, Chulumba should have known that interest was increasing and that the amount of debt was going up. How? The lawsuit doesn't say that the amount of debt is going up. Plus, the lawsuit came a few years earlier from the time that the letter was sent. With respect to the letter, again, it conflates the timeline. There's a seven-month gap, at least, between the time that the September letter was sent and some other case saying that Mr. Chulumba was insolvent and the deadline, April 2020 deadline, for him to pay. The citations also don't state, contrary to what has been said repeatedly, that's a misstatement. They don't say that the amount of debt is going up, that interest is increasing the amount of debt every single day. That's simply not true. It's not in the lawsuit. It's not in the citations. Also, the citations were sent to a third party. There's no evidence that Mr. Chulumba even received it. And the certificates of service don't state that he did. Also, with respect to the pleadings, Waltman says that the pleadings informed him that interest was going up. It didn't. And a statement that a pleading, a complaint sought post-judgment statutory interest doesn't mean anything to an unsophisticated consumer. And again, I point the panel toward LOCKSS. LOCKSS was clear that a consumer cannot be expected to know the legal meaning of terms. And Illinois post-judgment statutory interest does not equate to a communication that the amount of debt is going up. And presumably that's why Boucher was decided as it was. Presumably that's why Miller was decided as it was. Because unsophisticated consumers can't be expected to understand these things unless they're told these things in a clear manner that they would understand. And that's all I have. Thanks, counsel. Thanks to both counsel and the cases taken under advice.